IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Judge Charles M. Walker |
| **LEBANON PLATINUM, LLC,** *et al.*, | ) |
| | ) Case Number |
| Debtors. | ) 3:23-bk-03592 |
| | ) |
| | ) Jointly Administered |

## CONFIRMATION STATUS REPORT AND PROFFER FOR PLAN CONFIRMATION

The matter of plan confirmation is set before the Court for hearing on August 13, 2024 (the "Confirmation Hearing") upon the *Debtors' Combined Disclosure Statement and Chapter 11 Plan* (the "Plan") filed with this Court. [Doc. No. 387].

The Debtors in the above-captioned jointly administered cases (the "Debtors")[1] provide the following status report for the Confirmation Hearing to inform the Court of the resolution of all formal and informal objections to confirmation of the Plan, as well as a proffer for consideration by the Court in support of obtaining confirmation of the Plan. The proponent of this proffer is the Debtors' independent and disinterested restructuring advisor and authorized representative, Manoj ("Mike") Patel (the "CRO"), of National Hospitality Consulting Group ("NHCG"). The CRO will be present at the Confirmation Hearing to testify as to the veracity of this proffer. The Debtors provide this status report and proffer to (a) inform the Court that all known obstacles to confirmation have been resolved and (b) streamline the confirmation process through the testimony of the CRO, which the Debtors anticipate will be unchallenged and unimpeached.

---

[1] The jointly administered cases are as follows: *In re Cookeville Platinum, LLC*, Case No. 2:23-bk-03589; *In re Destin Platinum, LLC*, Case No. 3:23-bk-03596; *In re Murfreesboro Platinum, LLC*, Case No. 3:23-bk-03599; *In re Platinum Gateway II, LLC*, Case No. 3:23-bk-03597; *In re VMV, LLC*, Case No. 3:23-bk-03598; and *In re Lebanon Platinum, LLC*, Case No. 3:23-bk-03592 (collectively, the "Debtors") with each individually being a "Debtor").

1

# CONFIRMATION STATUS REPORT

The Debtors filed a *Certification of Voting and Tabulation of Ballots* (Doc. No. 428) (the "Ballot Certification") on August 9, 2024, as required by the Court's *Expedited Order (A) Authorizing the Debtors to File a Combined Disclosure Statement and Plan; (B) Granting Approval of Procedures for Solicitation and Tabulation of Votes to Accept or Reject Combined Disclosure Statement and Plan; (C) Scheduling Combined Hearing on Final Approval of Adequacy of Disclosure Statement and Confirmation of Plan; (D) Approving Form of Ballot; and (E) Granting Related Relief* (the "Confirmation Procedures Order"). [Doc. No. 403]. The statements contained in the Ballot Certification are incorporated herein by reference.

The Debtors filed the Plan on June 28, 2024. [Doc. No. 387]. The Court entered the Confirmation Procedures Order on July 9, 2024. [Doc. No. 403]. The Confirmation Procedures Order set a deadline for voting on the Plan and objecting to confirmation of the Plan for August 6, 2024 (the "Deadline").

Prior to the Deadline, the Debtors received one formal written objection and three informal objections. Each of these objections has been resolved by agreement without any material change to the feasibility of the Plan or the anticipated distribution to creditors thereunder. Moreover, the Debtors discussed each of these objections and resolutions with the United States Trustee, who does not oppose these resolutions. These objections and the resolution thereof are set forth below. The Debtors intend to announce these resolutions on the record at the Confirmation Hearing and integrate them into any order confirming the Plan (the "Confirmation Order").

## Formal Objections

1. **TaxCORE Lending, LLC ("TaxCORE")—Resolved.**

The only formal written objection to confirmation of the Plan came from TaxCORE. [*See* Doc. No. 425]. TaxCORE is a secured creditor of Debtor VMV, LLC, and its secured claim is treated as a Class 4 Claim in the Plan. The Plan proposes to pay the Class 4 Claim in full on the effective date of the Plan (the "Effective Date"). TaxCORE filed an objection, and a rejecting ballot, based on the Plan's purported failure to (a) pay post-petition interest, fees, and charges on its oversecured claim and (b) provide for TaxCORE's retention of its lien rights until the Class 4 Claim is paid in full.

The Debtors consent to this request, and they at all times intended to pay the full amount owed to TaxCORE—inclusive of post-petition interest, fees, and charges—on the Effective Date and allow TaxCORE to retain its lien rights pending such payment. The Debtors contend that this renders TaxCORE unimpaired and not entitled to vote on confirmation. Notwithstanding this, after discussion between the Debtors and TaxCORE, TaxCORE has agreed to support confirmation of the Plan and deem its objection resolved upon clarification of the foregoing in the Confirmation Order.

## Informal Objections

1. **United States Trustee ("UST")—Resolved.**

The UST raised an informal objection to confirmation of the Plan regarding Section 9.06 (Release of Claims) and Section 9.14 (Permanent Injunction). Section 9.06 of the Plan provides that, upon distribution of property of the estate on the Effective Date, the Debtors shall receive a release of all claims against the Debtors, including claims arising after the Petition Date and prior to the Effective Date. Section 9.14 provides for a permanent injunction on and after the Effective

3

Case 3:23-bk-03592   Doc 429   Filed 08/12/24   Entered 08/12/24 14:29:11   Desc Main
Document    Page 3 of 8

Date for any attempts to recover any claims against the Debtor other than as provided for in the Plan. The UST objected to the release and permanent injunction language given that the Plan provides for the liquidation of substantially all of the Debtors' assets other than the Vacant Lebanon Lots (as defined in the Plan).

The Debtors and the UST have resolved this informal objection by agreeing to remove Section 9.06 in its entirety and modify Section 9.14 to provide for a temporary injunction as to each Debtor, which shall expire automatically upon the complete liquidation of all property held thereby, including but not limited to the Vacant Lebanon Lots.

2. **Holiday Hospitality Franchising, LLC; Marriott International, Inc.; Hilton Franchise Holding, LLC; and HLT Existing Franchise Holding, LLC (the "Franchisors")—Resolved.**

The Franchisors collectively raised a limited informal objection to the mechanism for payment of administrative claims as it pertains to post-petition fees owed to the Franchisors by each respective Debtor. The Franchisors also requested certain clarifying edits to Section 7.02, which addresses the procedure for termination of each license agreement between the Debtors and the Franchisors (collectively, the "Franchise Agreements") on the Effective Date. The Franchisors' proposed clarifications were circulated both to the Debtors and G6—the Plan's funding source—neither of whom objected thereto.

The Confirmation Order shall reflect the following edits, which will be more specifically clarified in the Confirmation Order and the confirmed Plan, but are summarized here for informational purposes only:

  a. The Franchisors shall not be required to follow the administrative expense recovery procedures in Section 3.02 but instead shall receive their post-petition, pre-termination

4

Case 3:23-bk-03592   Doc 429   Filed 08/12/24   Entered 08/12/24 14:29:11   Desc Main
Document      Page 4 of 8

fees and expenses in the ordinary course of business as they have throughout these cases.

b. The Franchise Agreements shall terminate at 12:01 a.m. on the Effective Date, which shall be subject to a separate termination agreement, if so required by the relevant Franchisor.

c. The Debtors shall comply with their respective obligations under the Franchise Agreements through termination thereof at 12:01 a.m. on the Effective Date.

d. At the Franchisors' request, the Plan as confirmed shall include non-material clarifications to the temporary agreements contemplated in Section 7.02(b) and to the de-identification obligations contemplated in Section 7.02(c).

e. At the Franchisors' request, the Plan shall include a new Section 7.02(d) that shall authorize each Franchisor—absent any separate temporary or new Franchise Agreement with G6 or its assignee—to (a) stop accepting reservations after entry of the Confirmation Order for any periods after the Effective Date and (b) terminate the reservation system for each Debtor on or after 2:00 p.m. CST on the last business day before the Effective Date.

3. **Blusky Restoration Contractors, LLC ("Blusky")—Resolved.**

Blusky, a Class 7 general unsecured creditor of Debtor Destin Platinum, LLC ("Destin"), submitted a rejecting ballot and raised an informal objection[2] to confirmation of the Plan as it pertains to Destin, specifically with request to the amounts to be distributed on behalf of the Class 7 Claims. Blusky obtained a judgment in the District Court for Arapahoe County, Colorado, Case No. 2021CV30853 (the "Colorado Judgment") against Destin and certain other non-debtor

---

[2] For clarity, Blusky did not file a written objection by the Deadline due only to a written extension provided thereto by the Debtors pending the resolution of the objection as set forth herein.

affiliates thereof, including San Marcos Platinum, LLC and AUSDM, LLC (the "Affiliate Entities"). The Debtors, the Affiliate Entities, and G6—the Debtors' financing source under the Plan—have agreed with Blusky to a resolution of the objection, which resolution has been fully disclosed to the UST. Under this resolution, G6 will lend a total of $435,000.00 to the Affiliate Entities on a secured basis, which will be paid directly to Blusky on behalf of the Affiliate Entities to satisfy a portion of the Colorado Judgment against the Affiliate Entities. Blusky shall retain its status as a Class 7 general unsecured creditor of Destin and shall share in the distribution thereto on behalf of its allowed unsecured claim with the other members of Class 7. The Debtors have further agreed to include language in the Confirmation Order clarifying that confirmation of the Plan shall not impair Blusky's ability to pursue collection of the Colorado Judgment against any other judgment debtor or any person or entity against whom Blusky may have a claim. In consideration for this resolution, Blusky has agreed to support confirmation of the Plan and withdraw its objection thereto.

## PROFFER FOR CONFIRMATION OF THE PLAN

In light of the resolution of all formal and informal objections to confirmation of the Plan, the Debtors provide the following proffer in support of confirmation of the Plan, which proffer the Debtors intend to verify and confirm through the testimony of the CRO.

1. The Plan complies with all applicable provisions of Title 11 in accordance with § 1129(a)(1).

2. The proponent of the Plan has complied with all applicable provisions of Title 11 in accordance with § 1129(a)(2).

3. The Plan has been proposed in good faith and not by any means forbidden by law in accordance with § 1129(a)(3).

4. The Plan provides that any payments for services are reasonable, and either have been approved or are subject to approval by the court in satisfaction of § 1129(a)(4).

5. The Plan provides that the owners of each respective Debtor will retain their equity interests in the Debtors, though the Debtors shall have no ongoing operations, generate no income, and provide no compensation, whether to insiders or otherwise. Therefore, the Debtors submit that the Plan complies with § 1129(a)(5).

6. The Plan does not provide for any rate changes required by governmental commissions and therefore § 1129(a)(6) is not applicable.

7. Each impaired class of claims has accepted the Plan or will receive not less than they would receive if each respective Debtor were liquidated under Chapter 7 in satisfaction of § 1129(a)(7).

8. Each class of claims has accepted the Plan as a class or is not impaired under the Plan in satisfaction of § 1129(a)(8).[3]

9. Priority claims will receive payment in full on the Effective Date in accordance with § 1129(a)(9).

10. At least one impaired class of claims has accepted the Plan in satisfaction of § 1129(a)(10).

11. Confirmation is not likely to be followed by liquidation or need for further financial organization of the debtor not otherwise provided for within the Plan (*i.e.,* the Plan is "feasible") and satisfies § 1129(a)(11).

12. The Plan provides for the payment of all fees due and owing under 28 U.S.C. § 1930 as required by § 1129(a)(12) is not applicable.

13. The Debtor is not required to provide for retiree benefits under any appliable non-bankruptcy law and therefore § 1129(a)(13) is not applicable.

14. The Debtor is not required to pay any domestic support obligation by judicial or administrative order or by statute, and therefore § 1129(a)(14) is not applicable.

---

[3] The Debtors asserts that the Plan is consensual in that it is supported by all non-impaired classes entitled to vote. They contend that Class 1 (priority claims), Class 4 (TaxCORE secured claim), Class 5 (property tax claims), and Class 6 (Growth Capital, LLC's secured claim against Lebanon Platinum, LLC) are unimpaired. They further contend that Class 2, Class 3, Class 7, and Class 10 have accepted the Plan. The only impaired classes that did not vote are Class 8 and 9. Class 8 is the ostensible secured claim of Z-Modular, LLC ("Z-Modular"), against Lebanon Platinum LLC and Cookeville Platinum, LLC. Class 9 is the ostensible secured claim of First National Bank of Tennessee ("FNB") against Platinum Gateway, LLC. As set forth in the Plan, neither Z-Modular nor FNB holds a valid security interest in any estate property, and to the extent they do, their respective secured claims are valued at $0.00 pursuant to 11 U.S.C. § 506(a)(1). Accordingly, each are members of Class 10, which has voted to accept the Plan. Therefore, the Debtors assert that 11 U.S.C. § 1129(a)(8) is satisfied. To the extent there is any issue with the Debtors' conclusion on this point, the Debtors shall pursue confirmation under 11 U.S.C. § 1129(b), which does not require satisfaction of 11 U.S.C. § 1129(a)(8) as a condition of confirmation.

15. Based on the resolution set forth above, no holder of an allowed unsecured claim objected to confirmation of the Plan, and therefore § 1129(a)(15) is not applicable. To the extent it were applicable, the Debtors contend that they have complied with this section by distributing more under the Plan than the Debtors' projected disposable income over five years given that the Debtors will no longer earn income following the Effective Date.

16. All transfers of property under the Plan are to be made in accordance with applicable non-bankruptcy law governing transfers of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust in compliance with § 1129(a)(16).

17. The Debtors assert that the Plan satisfies all requirements of § 1129(a). To the extent the Court determines that the Plan does not satisfy § 1129(a)(8), the Debtors assert that § 1129(a)(8) is not required for confirmation under § 1129(b), and that the Plan meets the requirement of § 1129(b) and shall be confirmed thereunder.

**WHEREFORE**, based on the above proffered statements, the Debtors request that the Plan be confirmed at the Confirmation Hearing pursuant to 11 U.S.C. § 1129(a) or, alternatively in the event the Court determines that the Plan does not comply with § 1129(a)(8), that the Plan be confirmed at the Confirmation Hearing pursuant to 11 U.S.C. § 1129(b).

Respectfully submitted,

/s/ Henry E. ("Ned") Hildebrand, IV
Henry E. ("Ned") Hildebrand, IV
Gray Waldron
DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
9020 Overlook Boulevard, Suite 316
Brentwood, TN 37027
615.933.5851
ned@dhashville.com
gray@dhnashville.com
*Counsel for the Debtors*

## CERTIFICATE OF SERVICE

On August 12, 2024, the foregoing document was served via CM/ECF on all parties consenting to electronic service in this case.

/s/ Henry E. ("Ned") Hildebrand, IV
Henry E. ("Ned") Hildebrand, IV